IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TROY THORNTON,**<br>*Petitioner,*<br><br>**v.**<br><br>**BERNADETTE MASON, et al.,**<br>*Respondents.* | **Civil No. 24-5097** |

**MEMORANDUM**

**Costello, J.** **November 6, 2026**

Petitioner Troy Thornton was convicted of first-degree murder in 2013. After failing to obtain post-conviction relief in state court, he filed the instant petition for writ of habeas corpus. Petitioner claims that the Commonwealth withheld exculpatory evidence during his trial and that his trial counsel was constitutionally ineffective. The petition was referred to U.S. Magistrate Judge Scott W. Reid for a Report and Recommendation. Judge Reid recommended that this Court dismiss the petition in part and deny it in part. Petitioner objected. For the reasons that follow, the Court will overrule Petitioner's objections and adopt Judge Reid's recommendations.

## I. BACKGROUND

### A. Petitioner's Underlying Conviction

On February 15, 2013, Petitioner was convicted of the murder of Charles Johnson and given the mandatory sentence of life imprisonment without the possibility of parole. *Commonwealth v. Thornton*, 303 A.3d 769 (Table), 2023 WL 4699521, at *1 (Pa. Super. Ct. July 24, 2023) ("*Thornton II*"). At the time of his death, Johnson's sister, Charlyne Johnson, was pregnant with the child of an individual named Dante Williams. *Commonwealth v. Thornton*,

2015 WL 7195495, at *1 (Pa. Super. Ct. May 11, 2015) ("*Thornton I*"). Charles and Charlyne Johnson discovered that Williams was romantically involved with another woman. *Id.* On January 12, 2011, Charles Johnson drove to Williams' Washington Avenue home along with Anton Johnson and Dion Garner. *Id.* At the time, Williams was home with his mother, Selina Williams, and her boyfriend, Sean Jenkins. *Id.*

The Williamses became suspicious when they saw Charles Johnson's car and its occupants. *Id.* Jenkins called Mikael Coles to come to the Williamses' residence because "something was going to go down." *Id.* Coles arrived at the house with Sean Jones and Petitioner. *Id.*

Shortly after arriving, Coles, Jones, and Petitioner approached Johnson's car from the back alley of the Williamses' home. *Id.* at *2; Report & Recommendation at 2 (ECF No. 14). Petitioner approached from the right-hand side of the vehicle. *Thornton I*, 2015 WL 7195495, at *2. He asked the group who they were. *Id.* When Anton Johnson asked Petitioner who he was, Petitioner reportedly began shooting at the car. *Id.* Anton Johnson and Garner escaped unharmed and fled the scene on foot. *Id.* Charles Johnson was shot multiple times and killed. *Id.*

On January 25, 2011, Jenkins and Ms. Williams gave separate statements to police. *Id.* They identified Petitioner from Pennsylvania Department of Transportation photographs and described his participation in the shooting. *Id.* Six days later, Anton Johnson identified Petitioner as the shooter during a photographic array conducted by Detective Philip Nordo. *Id.*

At trial, Anton Johnson and Dion Garner testified that Petitioner was the shooter. ECF No. 14 at 3. Ms. Williams also testified that Petitioner said he shot at the car because one of its occupants shot at him. *Id.* On direct appeal, the Pennsylvania Superior Court affirmed

Petitioner's conviction and sentence. *Thornton II*, 2023 WL 4699521, at *1. Petitioner did not attempt to appeal to the Pennsylvania Supreme Court. *Id.*

**B. Petitioner's Post-Conviction Relief Proceedings**

On April 22, 2016, Petitioner timely filed a petition under the Pennsylvania Post Conviction Relief Act ("PCRA"). *Id.* Petitioner claimed that the Commonwealth suppressed evidence of Detective Nordo's misconduct that he could have used to discredit Anton Johnson's identification in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 14 at 10. Petitioner further claimed that trial counsel was ineffective for failing to call alibi witnesses and request a trial lineup identification procedure for Anton Johnson. ECF No. 14 at 12-13. Petitioner included a statement from Patrice Dantzler, who provided an alibi for him at the time of the murder. *Thornton II*, 2023 WL 4699521, at *1.

The PCRA court held evidentiary hearings in March and May 2022. *Id.* There, trial counsel testified that Petitioner did not inform him about any alibi witnesses at the time, which the court found credible. *Id.* at *3. On June 1, 2022, the PCRA court denied the petition. *Id.* at *1.

Petitioner appealed to the Pennsylvania Superior Court, arguing that (1) trial counsel was ineffective for failing to adequately prepare for his trial and by failing to call alibi witnesses known to Petitioner at the time of trial, and (2) trial counsel was ineffective for failing to file a post-sentence motion. *Id.* Petitioner's *Brady* and lineup claims were not included in his appeal. On July 24, 2023, the court affirmed the denial of his petition. *Id.* at *4. Petitioner appealed to the Supreme Court of Pennsylvania, which was denied on September 24, 2024. *Commonwealth v. Thornton*, 326 A.3d 814 (Table) (Pa. 2024) ("*Thornton III*").

### C. Judge Reid's Report and Recommendation

The same day that the Pennsylvania Supreme Court denied his appeal, Petitioner filed the instant petition for writ of habeas corpus. *See generally* Petition (ECF No. 1). The petition raises the same *Brady*, lineup, and alibi claims that Petitioner presented in state court. ECF No. 1 ¶ 11; ECF No. 14 at 4. On September 26, 2024, this case was referred to Judge Reid for a report and recommendation ("R&R"). *See* Referral Order (ECF No. 2).

On May 21, 2025, Judge Reid found that Petitioner's *Brady* and lineup claims were procedurally defaulted and meritless. *See* ECF No. 14 at 10-12. He also found that Petitioner failed to meet his burden under 28 U.S.C. § 2254(d) with respect to his alibi claim. *Id.* at 13-14. Petitioner objected to each of these findings. *See generally* Objections to R&R (ECF No. 15).

## II. LEGAL STANDARD

"The Court reviews *de novo* the specific portions of the R&R to which the parties object and 'may accept, reject, or modify'" those conclusions "in whole or in part." *West v. Luther*, No. 20-740, 2021 WL 4744836, at *4 (E.D. Pa. Oct. 12, 2021) (quoting 28 U.S.C. § 636(b)(1)).[1]

## III. DISCUSSION

### A. Petitioner's *Brady* Claim

Judge Reid found that Petitioner procedurally defaulted his *Brady* claim because he failed to appeal the claim to the Pennsylvania Superior Court. ECF No. 14 at 10-11. Petitioner argues his default should be excused because PCRA counsel's failure to appeal that claim constituted

---

1 Respondents argue that Petitioner's "[o]bjections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to de novo review." Response to Petitioner's Objections at 3 (ECF No. 18) (quoting *Gray v. Delbiaso*, No. 14-4902, 2017 WL 2834361, at *4 (E.D. Pa. June 30, 2017)). "That is not correct; any appeal to a district court based on an objection to a Magistrate Judge's order will 'rehash arguments presented to and considered by' the Magistrate Judge. That is—by definition—the very nature of 'review.'" *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).

ineffective assistance of counsel. ECF No. 15 at 2-3. Whatever shortcomings PCRA counsel may have had, it cannot excuse Petitioner's procedural default.

Ordinarily, procedural default constitutes an independent and adequate state law ground to support a petitioner's conviction, precluding federal habeas review. *Moses v. Dist. Att'y Phila.*, 133 F.4th 251, 257 (3d Cir. 2025) (quoting *Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014)). Procedural default may be excused only if the prisoner shows (1) "good cause for the procedural default" and "prejudice from the alleged violation of federal law," or (2) that "barring the petition would create a 'fundamental miscarriage of justice.'" *Johnson v. Mahanoy*, 144 F.4th 178, 188 (3d Cir. 2025) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Petitioner bases his objection on cause-and-prejudice, arguing that PCRA counsel's ineffectiveness provides good cause for his default. *See* ECF No. 15 at 3.

"There is no constitutional right to an attorney in state post-conviction proceedings." *Coleman*, 501 U.S. at 752 (citation omitted). Therefore, "constitutionally ineffective assistance of counsel in such proceedings" cannot excuse procedural default. *Id.* There is, however, one "narrow exception." *Marinez v. Ryan*, 566 U.S. 1, 9 (2012). "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's default of a claim of ineffective assistance at trial." *Id.*

Petitioner argues that the *Martinez* exception applies. *See* ECF No. 15 at 2-3. It does not. *Martinez* does not "reach post-conviction counsel's failure to preserve *Brady* claims." *Johnson*, 144 F.4th at 191 (citing *Hunton v. Sinclair*, 732 F.3d 1124, 1126 (9th Cir. 2013)). Petitioner's reliance on *Moses* is inapposite. *Moses* merely provided a framework to apply the *Marinez* exception. *See* 133 F.4th at 258. It does not create its own independent exception.

Accordingly, because Petitioner's default cannot be excused, the Court will dismiss his *Brady* claim. *Coleman*, 501 U.S. at 729.

**B. Petitioner's Lineup Ineffective Assistance of Counsel Claim**

Judge Reid found that Petitioner procedurally defaulted his lineup claim because it was not part of his PCRA appeal. ECF No. 14 at 12. Petitioner again argues that his default should be excused under *Martinez*. ECF No. 15 at 4. Petitioner is mistaken. However, because he argues that PCRA counsel was constitutionally ineffective in bringing an ineffective assistance of trial counsel claim, his lineup claim is within the ambit of *Martinez*. *See* 566 U.S. at 9.

For the *Martinez* exception to excuse procedural default, a habeas petitioner must show that (1) "the postconviction counsel's ineffective assistance . . . caused the default," (2) default occurred in the "initial-review collateral proceeding," and (3) "the underlying claim of trial counsel ineffectiveness . . . has some merit." *Moses*, 133 F.4th at 258-59 (quoting *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014)).

Even if Petitioner can show that his post-conviction counsel was ineffective, the default did not occur during the initial-review collateral proceedings. "*Martinez* only applies to excuse an attorney's failure to present an ineffective assistance of trial [counsel] claim in an initial collateral review proceeding, not an attorney's failure to raise the claim in an appeal from such a proceeding." *Guy v. Phelps*, 950 F. Supp. 2d 746, 756 n.1 (D. Del. 2013); *Martinez*, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . . ."). Here, Petitioner does not argue that counsel was ineffective for failing to raise the lineup claim before the PCRA court. *See* Second Amended PCRA Petition ¶ 40 (ECF No. 13-4). Rather, he argues that PCRA counsel was ineffective for failing to *appeal* his lineup claim. ECF No. 15 at 4. Because counsel

properly raised the claim before the PCRA court, counsel's failure to appeal that claim cannot excuse Petitioner's procedural default. Accordingly, the Court must dismiss Petitioner's lineup claim.

**C. Petitioner's Alibi Witness Ineffective Assistance of Counsel Claim**

Judge Reid found that Petitioner's alibi claim should be denied on its merits because Petitioner did not show that the PCRA court made an unreasonable determination of the facts. ECF No. 14 at 14. Petitioner argues that the PCRA court unreasonably "credited testimony that was not based on prior counsel's recollection of what actually happened during his representation." *Id.* at 7.

When a petitioner's habeas claims were already adjudicated in state court, a federal court can grant habeas relief only if that adjudication (1) was contrary to clearly established federal law, or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are presumed correct and may be disturbed only if the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"[T]he relationship between the standards enunciated in § 2254(d)(2) and § 2254(e)(1) remains unclear." *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004); *Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("We have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)."). However, the statute implies that "§ 2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the evidence presented in the state-court proceeding, while § 2254(e)(1) contemplates a challenge to the state court's individual factual determinations." *Lambert*, 387 F.3d at 235.

"Section 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or unreasonable" given "the evidence relied upon in the state court proceeding." *Id.* On the other hand, § 2254(e)(1) applies when "a petitioner . . . attack[s] specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.* The Court must therefore apply a two-step framework. First, the Court must determine which of "a state court's individual factual determinations," if any, should be overturned under § 2254(e)(1). *Id.* Then, based on "what factual findings remain to support the state court decision," the Court must determine whether that decision was unreasonable under § 2254(d)(2). *Id.* at 235-36. Hence, "the PCRA court's determination as to [trial counsel's] credibility is potentially subject to two levels of deference under sections 2254(d) and 2254(e)(1)." *Bazzley v. Houser*, No. 21-2256, 2022 WL 2986269, at *8 (E.D. Pa. July 28, 2022); *see also Brooks v. Garman*, No. 17-5604, 2018 WL 8755260, at *6-7 (E.D. Pa. Nov. 8, 2018).

Trial counsel testified that he:

> did not recall being told there was an alibi defense but recalls speaking with [his supervising attorney] about strategy and preparing a defense of misidentification and lack of opportunity to observe. [Trial counsel] prepared for the case "meticulously," day and night and stated that if alibi was mentioned, "we would have hopped all over that and called an investigator." [Trial Counsel] further testified "if someone got life because I didn't call an alibi witness, I would remember it," and "I would not have ignored something that important."

ECF No. 14 at 14 (quoting *Thornton II*, 2023 WL 4699521, at *3). The Superior Court and PCRA court found this testimony credible. ECF No. 14 at 13. And counsel's statements were corroborated by the PCRA hearing transcripts. ECF No. 14 at 14.

Petitioner argues that "there was a complete *absence* of competent evidence to support a finding that counsel acted reasonably in representing Mr. Thornton in connection with the alibi issue." ECF No. 15 at 7. Petitioner misunderstands his burden of proof. He must show that (a)

the PCRA court's credibility determination was incorrect by clear and convincing evidence and (b), excluding trial counsel's testimony, the court's disposition of the case was unreasonable. The Commonwealth is under no obligation to prove reasonableness.

Furthermore, Petitioner claims that trial counsel "testified that he didn't know about the alibi because he would have done some things differently" otherwise. ECF No. 15 at 7. Petitioner's argument seems to be that the PCRA court erroneously credited trial counsel's testimony because trial counsel could not prove that he was not told something. However, "[t]he law has long recognized that such an evidentiary feat is next to impossible." *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 322 (3d Cir. 2014) (citing *Piedmont & Arlington Life-Ins. Co. v. Ewing*, 92 U.S. 377, 380 (1875)). Moreover, Petitioner again misunderstands that he has the burden of proof.

Because Petitioner has not shown that the PCRA court was incorrect in its credibility determination, that determination binds this Court. Because Petitioner failed to inform trial counsel about his alibi witness, counsel was not constitutionally ineffective in failing to call that witness. Hence, the state court's disposition of this case was not unreasonable. Accordingly, the Court will deny Petitioner's alibi claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will overrule Petitioner's objections and adopt Judge Reid's Report and Recommendation. The Court will dismiss Petitioner's *Brady* and lineup claims and deny his alibi claim. An appropriate Order follows.

**BY THE COURT:**

MARY KAY COSTELLO
United States District Judge